FRANK CRUTCHFIELD V. THE STATE.

No. 20553. Delivered November 8, 1939.

The opinion states the case.

*Jimmie Cunningham,* of Graham, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted by a jury for the possession of intoxicating liquor, in a dry area, for the purpose of sale, and was by the jury given a sentence of five months in the county jail; hence this appeal.

The State's testimony, briefly summarized, shows that one J. W. Marrow, district supervisor of the Texas Liquor Con-

trol Board, together with Mr. Crisp, went upon a mountain, about one-fourth of a mile from where appellant lived, for the purpose of watching appellant's house. After remaining there for some time Mr. Crisp came back down in the valley, leaving Mr. Marrow on watch. While Crisp was gone Mr. Marrow testified that he saw appellant and his brother Charlie come upon the mountain to a place about thirty steps from where the witness was located, and that appellant stooped over, and while he was stooping over witness Marrow appeared from around behind a large rock, with his gun in his hand, and told them that he was an officer, and asked them what they had hid up there; that Charlie Crutchfield had a rock in his hand, and turned to appellant and told him not to let that law search him. That Frank Crutchfield then straightened up and came up to where the witness was standing, and replied that they did not have anything hid up there. That after talking to this man awhile the appellant and his brother went back down the mountain to their house, and Marrow went to where appellant had stooped down, and under some rocks in the ravine the witness saw some whisky and wine; that he did not remove the wine and whisky until Crisp returned from town; then the two removed the rocks and found ten pints of whisky and four quarts of wine, and it was the same whisky and wine as exhibited in court at the trial. That witness found this liquor on a mountain about one-fourth of a mile from appellant's house; he did not know who owned the land where it was buried; that he did not see either appellant or his brother with the whisky or wine in their hands, but found it in a ravine about waist high where appellant was stooping down. Mr. Crisp corroborated Mr. Marrow as to the finding of the liquor, but did not see either of the Crutchfields when they came upon the mountain, and did not see them in possession of this whisky and wine.

Appellant's brother, Charlie, testified and claimed that he and his brother were chasing a dog that had been killing their chickens, and that they followed this dog up on the mountain; that while so doing appellant fell down, and when he was getting up Mr. Marrow ran out from behind a big rock with a gun in his hand and said: "I am an officer, what are you boys got hid up here?" Appellant got up and went to Marrow and said "We don't have anything hidden up here." Marrow then replied "I'll see," and appellant told him to "go ahead and look around, the mountain don't belong to us." The appellant further said that there was a dance hall close by, run by his mother; that he had nothing to do with it.

Appellant testified that he was raised down there by the mountain; had played on it when a child; trapped skunks on it every winter; that it was not on his place; he didn't know who owned it, and he had no control over it, nor did his brother; lots of people went upon the mountain and gathered wood and other things; anybody could go up there that wanted to do so; there were trails running in all directions up on the mountain; it was not his, nor was this whisky his either; he had no control over either the mountain or the whisky. Appellant testified that he was a painter and cabinet maker; that the dance hall was not his, nor did he have any control over it. That he and his brother were chasing a dog that had killed their chickens, and that he fell down about one-half mile from the house, and while he was getting up he first saw Mr. Marrow; he didn't know whether the whisky was found where he fell down or not; if so, it was not his whisky, and he didn't know anything about it until the sheriff served a warrant on him.

In our opinion these facts are not sufficient to convince one's mind beyond a reasonable doubt that this whisky belonged to appellant and his brother. It was found from one-fourth to one-half a mile away from their home, on a mountain, which the testimony shows to have been practically open to the public, with trails running all over the mountain, and the only connection shown to have been had therewith of appellant and his brother was the fact that appellant "stooped down," so the officer said, and "fell down," so appellant said, over or near where this whisky was hidden. The officer never saw either of these parties touch such whisky, nor take same into their possession. This may be a case where the officer was in too much of a hurry, and flushed his quarry a few minutes too soon. It may have been their whisky, but the fact remains that they had not touched the same, nor taken it into their possession at the time of their discovery by the officer.

This is a case depending upon circumstantial evidence, and as such, to our minds, it does not exclude every other reasonable hypothesis than that of the appellant's guilt. We are not willing to say that therefrom we are convinced that these two Crutchfields, and no other, possessed this quantity of liquor for the purpose of sale.

Thus believing, this judgment is reversed and the cause remanded.